298 So.2d 140 (1974)
Mrs. Edith A. HERLITZ et al., Plaintiffs-Appellants,
v.
CITY OF BATON ROUGE et al., Defendants-Appellees.
No. 9895.
Court of Appeal of Louisiana, First Circuit.
June 28, 1974.
Rehearing Denied August 13, 1974.
Writ Refused October 18, 1974.
*141 Ashton L. Stewart, Baton Rouge, for plaintiffs-appellants.
Joseph F. Keogh, Parish Atty., Edward V. Fetzer, Asst. Parish Atty., James B. Frederick, Jr., Asst. Parish Atty., Baton Rouge, for defendants-appellees.
Before SARTAIN, J., and BAILES and VERON, JJ. Pro Tem.
SARTAIN, Judge.
This suit seeks to permanently enjoin the City of Baton Rouge and the Parish of East Baton Rouge from demolishing an existing section of North Fifth Street adjacent to plaintiffs' land and from constructing a public rest area or "mini-park" where the street formerly was located.
On October 5, 1806, Gilbert Leonard acquired a tract of land in the City of Baton Rouge which when subdivided by him shortly thereafter became known as Gilbert Leonard Town. The plaintiffs' tract, a part thereof, measures 76 feet front on the southerly side of Convention Street by a depth between parallel lines of 128 feet, with the westerly side fronting on the original location of North Fifth Street.
In about 1969, North Fifth Street was rerouted in a westerly direction by the Municipal Authorities to facilitate the flow of traffic. Prior to this relocation, North Fifth had, from the time of the creation of the subdivision, caused traffic which wanted to continue northbound across Convention Street to stop, make a left turn on Convention for a short distance, then make another right turn on the continuation of Fifth. To eliminate this "dog leg", Fifth Street was moved to the west to connect directly with its continuation on the north side of Convention. When completed, only a "stub" of the old route of Fifth Street remained as before. Thereafter, this "stub" was blocked and curbed and, in 1972, the Municipal Authorities took up the paving from it and filled the old route. They now propose to beautify and landscape the grounds of the old street bed and create a public rest area consisting of benches and a fountain enhanced by landscaping.
The plaintiffs' suit to enjoin these actions was dismissed in the district court. In extensive written reasons for judgment, the trial judge concluded that the City had acquired the total ownership of Fifth Street and was thus free to use it for public purposes. That decision was based principally upon our ruling in Ross v. City of Covington, 271 So.2d 618 (La.App. 1st Cir. 1972), writ refused, 273 So.2d 844, (La.1973), it being the determination in the trial court that sufficient proof of the intent to permanently dedicate Fifth Street to the public by the subdivider was produced by the City. We affirm that judgment.
Initially, we must decide the extent of the public's interest in the remaining "stub" of North Fifth Street, which the *142 parties have stipulated has been a public way since the subdivision was originally laid out by Gilbert Leonard. In Ross, supra, the law of dedication was stated in these terms:
"Louisiana recognizes two types of dedication, statutory and implied or common law. A common law dedication confers only a servitude of use on the public and such dedication must be accepted by the public to be effective. A statutory dedication is complete without the necessity of acceptance or use by the public. See Arkansas-Louisiana Gas Co. v. Parker Oil Co., Inc., 190 La. 957, 183 So. 229 (1938).
"The Louisiana Statute controlling statutory dedication is Act 134 of 1896 (LSA-R.S. 33:5051) which provides, in substance, that, whenever the owner of a real estate desires to subdivide the same into squares or lots with the streets and alleys, he shall first make a map of the real estate to be divided and record the same in the Conveyance Records of the Parish where the property is located. He is additionally required to note on the map, inter alia, a proper description of the alleys, squares, lots, and streets and also a formal dedication to the public use by the owner of all the lots, streets, alleys, and public squares shown on the map.
"Our courts have held that when dealing with subdivisions created prior to the enactment of Act 134 of 1896, the sale of lots in accordance with a plat or plan of subdivision constituted an irrevocable dedication to the public of the streets and alleys shown thereon. Also, this same rule has been applied to subdivisions created after 1896, when the provisions of Act 134 of 1896 were not strictly complied with or were not mentioned. Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965); Iseringhausen v. Larcade, 147 La. 515, 85 So. 224 (1920); Banta v. Federal Land Bank of New Orleans, 200 So.2d 107 (La.App. 1st Cir. 1967); Esposito v. Gaudet et al., 8 So.2d 783 (La.App.Orleans 1942). Thus, if it is shown that dedication occurred prior to 1896, the rights acquired by the public to the property will not be diminished in the absence of strict compliance with the requirements of Act 134. In any event, regardless of the method used, the intent to dedicate must be clearly established by the evidence."
We agree with the trial judge that sufficient proof has been introduced by the City to establish that it was the intent of Gilbert Leonard to irrevocably dedicate North Fifth Street insofar as it was located within his subdivision. It has been stipulated that Gilbert Leonard laid out this subdivision and sold lots according to his plans and that Fifth Street was an original part of the plan and that it has been recognized and used always and only as a public street since the subdividing. Numerous maps made throughout the 1800's with one dating to 1809, have been introduced, all of which uniformly recognize Fifth Street as established by Leonard. Additionally, some of the maps introduced were made by Andre LeSage, Parish Surveyor, who made the original survey map of Gilbert Leonard Town in about 1806; each of these refer to the original plan of Gilbert Leonard Town without exception. We think that the evidence preponderates that Gilbert Leonard irrevocably dedicated to public use that part of North Fifth Street within his subdivision.
Counsel for the appellants argues that this proof is similar to that which we held to be insufficient to prove irrevocable dedication in City of Baton Rouge v. State National Life Insurance Co., 271 So.2d 571 (La.App. 1st Cir., 1972), writ refused, 274 So.2d 709 (La.1973). While we are cognizant of the ruling therein, the proof of the intent of the subdivider is more compelling here than in State National Life.
Certainly it is ample proof of at least an implied dedication and it appears that, prior to 1825, any dedication would vest *143 full title in the city. In 1825, present Civil Code Article 658 was enacted which provides:
"Art. 658. Ownership of servient estate
"Art. 658. The part of an estate upon which a servitude is exercised, does not cease to belong to the owner of the estate; he who has the servitude has no right of ownership in the part, but only the right of using it.
"Hence the soil of public roads belongs to the owner of the land on which they are made, though the public has the use of them; the owners of the land can not change the roads except in conformity with the regulations of the police established on this subject."
As noted by Professor Yiannopoulos in Louisiana Practice, Civil Law of Property, Sec. 35:
"The nature of the public interest created in roads and streets by an informal dedication has been a controversial subject in Louisiana, and has given rise to conflicting judicial determinations. The earliest Louisiana case to present the issue was Renthrop v. Bourg, [4 Mart 97] decided in 1816. The Louisiana Supreme Court citing Roman and Spanish authorities, held that the title to public roads was vested in the public. However, dicta in subsequent cases cast considerable doubt on that rule. In the meanwhile, the Louisiana Civil Code of 1825 was enacted, and Article 654 thereof provided that `the soil of public roads belongs to the owners of the land on which they are made.'"
As the dedication by Gilbert Leonard of that part of Fifth Street at issue here was made well prior to 1825, we conclude that on this ground also, the City of Baton Rouge has full ownership of it.
The appellants argue that Civil Code Article 861 is authority for their bringing this action to have the present obstructions removed from the old route of this street. That article contains these provisions:
"Art. 861. Works obstructing or embarrassing public places, navigable river beds or banks
"Art. 861. Works which have been formerly built on public places, or in the beds of rivers or navigable streams, or on their banks, and which obstruct or embarrass the use of these places, rivers, streams, or their banks, may be destroyed at the expense of those who claim them, at the instance of the corporation of the place, or of any individual of full age residing in the place where they are situated.
"And the owner of these works can not prevent their being destroyed under pretext of any prescription or possession, even immemorial, which he may have had of it, if it be proved that at the time these works were constructed, the soil on which they are built was public, and has not ceased to be so since."
We think the article is inapplicable to the case at bar as it envisions situations in which private works have been erected on public property; where such works detract from the usefulness of the public place, a citizen may act in his own right to have them removed if the works are detrimental to that citizen's property. See Howcott v. Ruddock-Orleans Cypress Co., 146 La. 318, 83 So. 586 (1920). The article has no application where a municipal authority has created duly authorized works on public property.
Our courts have recognized that a city is empowered with authority to control its streets and to make reasonable regulations for their use; absent a showing of arbitrary or discriminatory action by its governing authority, those measures should be maintained. See Scott v. City of West Monroe, 95 So.2d 343 (La.App. 2nd Cir., 1957) and cases cited therein. No such showing was made here. The contrary has *144 been shown. Mr. Charles W. Hair, Jr., Chief Engineer of the Department of Public Works, for the appellees testified that the relocation of North Fifth Street at its intersection with Convention Street was deemed necessary in the interest of traffic safety. Accordingly, appellees considered it wiser not to revoke the dedication of the old street bed of North Fifth Street, but acquire property on the west side thereof and relocate the street sufficiently enough to eliminate the "dog leg" previously referred to. Further, it was determined by the Department, i. e., appellees that ownership be retained in the old street bed to satisfy possible future traffic needs. In the interim period, the "stub" would be landscaped and used for pedestrian traffic. At the time of the trial the old pavement had been removed, the ground landscaped, planted with grass, and sidewalks were installed. He denied that plaintiffs would be arbitrarily denied ingress to or egress from their property from North Fifth Street.[1] Such driveway as might be requested would be granted or denied depending on the type of permit desired and whether such ingress or egress constituted a traffic hazard. We deem this decision on appellees part to be within the police power granted to a municipality in the control and authority vested in it relating to the installation, maintenance, relocation, and supervision of public streets.
The plaintiffs' rights of ingress and egress, as of the date of the hearing, have not been disturbed and the facilities to be maintained there, as proposed, will not be a nuisance. The injunction is, therefore, denied. All costs of this appeal to be paid by appellants.
Affirmed.
BAILES, J. Pro Tem., concurs with written reasons assigned.
BAILES, Judge Pro Tem. (concurring):
I concur in the holding that plaintiffs are not entitled to an injunction to prevent the defendants from closing the subject portion of Fifth Street or to prevent the erection of a rest area or park on the ground urged by plaintiffs.
Plaintiffs pray for an injunction to prevent the defendants, City of Baton Rouge and Parish of East Baton Rouge, "from blocking said portion of said North Fifth Street in front of plaintiffs' said tract of land, and from constructing said park thereon." And, in their brief, plaintiffs state they "are only seeking the removal of obstruction on Fifth Street on which their land abuts."
My appreciation of the relief plaintiffs seek is an injunction to prevent the closing of Fifth Street, and incidentally and consequentially, the removal of any and all obstructions in Fifth Street. It is clear to me that plaintiffs intend to stand or fall on the rights they contend they have under LSA-C.C. Article 861 to bring this action, and enforce it through injunctive process, to force the defendants to maintain the abandoned portion of Fifth Street.
Article 861 of the Civil Code provides:
"Works which have been formerly built on public places, or in the beds of rivers or navigable streams, or on their banks, and which obstruct or embarrass the use of these places, rivers, streams, or their banks, may be destroyed at the expense of those who claim them, at the instance of the corporation of the place, or of any individual of full age residing in the place where they are situated.
"And the owner of these works can not prevent their being destroyed under pretext of any prescription or possession, even immemorial, which he may have had of it, if it be proved that at the time these works were constructed, the soil on which they are built was public, and has not ceased to be so since."
With confidence, plaintiffs pitch their case on the applicability of this article to *145 the circumstances of the instant case, and on the court's holding in the case of Howcott v. Ruddock-Orleans Cypress Co., 146 La. 318, 83 So. 586 (1920). In this cited case certain streets in a then undeveloped section of New Orleans were obstructed or closed by the sawmill plant of the defendant. This obstruction denied plaintiff access to certain property he owned, except by a circuitous route. Further, the obstructions made less desirable plaintiff's property for residential development. The court held that plaintiff was entitled to have the obstructions removed from streets on which plaintiff's property abutted.
I find LSA-C.C. Article 861 and the Howcott case will not support plaintiffs' case.
While plaintiffs' case is pitched on the concept that the defendants are obstructing the subject portion of Fifth Street, I view defendants' action purely and simply as an abandonment of that portion of Fifth Street. However, plaintiffs do not appear to be interested in claiming title to the half of the subject portion of Fifth Street contiguous to their property on the west. In addition to the above quotation from plaintiff's brief, plaintiff further stated therein, "(I)nasmuch as the plaintiffs in this present suit only sue to have obstructions (emphasis added) removed from the street on which their property abuts, we submit that the fact that their property does not abut Fifth Street, without any other showing, is the required injury peculiar to plaintiffs to entitle them to sue to champion the public's rights under C.C. Art. 861, as interpreted by this Howcutt case."
Unquestionably, in the exercise of its sound discretion, under the provisions of LSA-R.S. 48:701, the defendants have the right to abandon a portion' of Fifth Street and relocate it where they did, the relocation of which would cause plaintiff's property to be then noncontiguous to Fifth Street notwithstanding.
It is clear to me that plaintiffs could have brought suit as owners of the east half of the abandoned section of Fifth Street seeking removal of the park improvements under LSA-R.S. 48:701. (See: Richard v. New Orleans, 195 La. 898, 197 So. 594 (1940), and Martin v. Fuller, 214 La. 404, 37 So.2d 851 (1948).) However, plaintiffs in their brief have stressed the fact that they are seeking only the removal of the obstructions from Fifth Street.
I cannot subscribe to the statements in the prevailing opinion that the City of Baton Rouge as full ownership of the subject portion of Fifth Street. Under the pleadings and the avowed position of plaintiffs, it is not necessary to determine whether the dedication by Gilbert Leonard was a statutory dedication or an implied or "common law" dedication. Ownership of the street is really not an issue. The sole issue as resolved by the plaintiffs' position is whether the city can be prevented from abandoning that section of Fifth Street from which the defendants removed the paving and curb and gutters.
Whatever the type of dedication Gilbert Leonard made of Fifth Street, it was an area dedicated to the public as a street, title to which rested in the public, and the administration of which was in the defendants. When defendants relocated a portion of Fifth Street, under the holding of the court in Starnes v. Police Jury of Rapides Parish et al., 27 So.2d 134 (La.App. 2d Cir. 1946), the pertinent portion of which was approved by this Court in Bell v. Tycer, 97 So.2d 448 (La.App.1957), the old portion of Fifth Street was abandoned.
For these reasons, I respectfully concur only in the result.
NOTES
[1] Plaintiffs still retain 76 feet front on the south side of Convention Street.