JgSUSAN M. CHEHARDY, Judge.
This is a suit by landowners seeking a legal servitude of passage across defendant’s property. Defendant appeals a judgment in favor of plaintiffs. We affirm and remand for decision of other issues.
The suit was filed on July 2, 2001 by Esther Martiny Kavanagh, Cynthia Ann Cole, James Cole, Jr., Wilfred E. Martiny, Gayle Kavanagh Terrell, Patricia A. Kav-anagh, Maurice E. Kavanagh, Jr., Maureen Kavanagh O’Connell, and Lloyd Martiny, Jr. (plaintiffs) against Posey R. Bowers, Jr. (defendant).
Plaintiffs (hereafter also collectively called “the Kavanaghs”) own property bearing Municipal Number 3220 Veterans Memorial Boulevard in Metairie, Jefferson Parish, consisting of Lots 21, 22, 23 and 24, Square 50, Harlem Subdivision, and of another tract along the northern boundary of those four lots that was formerly part of the Twenty-Fourth (24th) Street right-of-way.[1] Both properties are described in reference to 24th Street, a street dedicated on the original subdivision plan but never developed.
*1167 | sThe unimproved right-of-way for 24th Street runs parallel to and within ten feet of Veterans Memorial Boulevard, which was constructed after the 24th Street right-of-way was dedicated.[2] Square 50 is bounded by 24th Street on the north, 25th Street on the south, Causeway Boulevard (formerly Harlem Avenue) on the east, and its western boundary line runs along the eastern boundary of the Athania Addition No. 2 subdivision.
Defendant’s property is a triangular strip containing 1,057 square feet, measuring 8.94 feet on the west boundary of Square 47 of Harlem Subdivision and running along 24th Street, tapering to a point on 24th Street 236.42 feet from the west line of Square 47, at what is now Causeway Boulevard, immediately adjacent to Veterans Memorial Boulevard. Defendant’s property is on the north side of the 24th Street right-of-way.[3] Defendant’s mother once owned the entire Square 47, but in 1955 and 1977 sold all of it except the strip now owned by defendant to the Parish of Jefferson for construction and/or widening of Veterans Memorial Boulevard (also referred to as “Veterans” or “Veterans Boulevard”).
Plaintiffs allege their property has no access to a public road and is landlocked, making it an enclosed estate. (Their lots are bounded on the south by other lots of Square 50.) They assert they have a right of passage over defendant’s property pursuant to La.C.C. art. 689, granting property access to the nearest public road.
14Plaintiffs alleged their property became enclosed when the Parish of Jefferson constructed the improvements for the right-of-way of Veterans Boulevard after acquisition of a portion of the property owned by defendant’s mother (his immediate ancestor-in-title). The improvements left only the small triangular portion of ground now owned by defendant, which lies to the north directly between plaintiffs’ property and Veterans Boulevard. Defendant leased this property to plaintiffs through five-year leases, the last of which expired on January 31, 2001.
Plaintiffs assert that since the lease expired they have been unable to reach an amicable agreement with defendant on a new lease of his property and their property has been without legal access to a public road. Similarly, they are attempting to lease their property, but are suffering damages because of their lack of guaranteed access to the nearest public road and the possibility that defendant will shut off access to their property across his property.
Plaintiffs sought judgment granting them a servitude of passage across defendant’s property to Veterans Memorial Boulevard and an injunction preventing defendant from denying them access to his property. They were granted a temporary restraining order on the date the petition was filed.
In answer, defendant denied that plaintiffs’ property is landlocked, asserting that plaintiffs’ and defendant’s properties are separated by a street designated as 24th Street that runs into Veterans Boulevard and is reflected on a June 30, 1997 survey.[4] Defendant asserted 24th Street was dedi *1168 cated to the Parish of Jefferson, that the dedication of the street has never been revoked by the Parish of Jefferson Rand, hence, that 24th Street provides a means of access to Veterans Boulevard and Causeway Boulevard. Defendant further alleged that plaintiffs had an option to renew the lease of his property for an additional five years from the January 31, 2001 expiration date, but they failed to exercise the option in the manner set forth in the lease agreement.
Both parties brought motions for summary judgment, which were denied. The case proceeded to trial on the merits. The trial was bifurcated and the parties agreed to postpone trial of any damages or compensation issues until after determination of whether plaintiffs’ property is an enclosed estate, making them entitled to a servitude of passage over defendant’s property under La.C.C. art. 689.
The parties made the following stipulations:
1. Defendant is the owner of the property that lies between plaintiffs’ property and Veterans Memorial Boulevard, over which plaintiffs seek a right of passage (“the Bowers Property”);
2. Plaintiffs are owners of Lots 21, 22, 23 and 24, Square 50, Harlem Subdivision (“Kavanagh Property 1”);
3. On March 23, 2000 plaintiffs purchased from the Parish of Jefferson the portion of the 24th Street right of way between the Bowers property and Kavanagh Property 1 (“Kavanagh Property 2”);
4. Kavanagh Property 2 abuts the remaining portion of the 24th Street right of way which runs out to Cause- , way Boulevard (“24th Street Right of Way”);
5. The 24th Street Right of Way which abuts Kavanagh Property 2 has not been revoked or transferred and the Parish of Jefferson is the owner.
6. The 24th Street Right of Way is 50 feet wide.
DAt trial the evidence established that 24th Street was dedicated to the Parish of Jefferson on a subdivision plan dated February 12, 1925, recorded in the parish conveyance office on December 28, 1951. Although all the property contiguous to 24th Street is described as bounded by 24th Street, it is uncontested that 24th Street has neither been used as a street by the public, nor developed as a street, nor maintained by the Parish. Instead, the owners of the properties along the 24th Street right of way — at least those properties mentioned in this lawsuit — -appear to have treated it as part of their own properties.
A Shell service station takes up the corner of the intersection of Veterans Memorial Boulevard and Causeway Boulevard, at the end of the block on which the Kav-anagh property is located. A photograph introduced into evidence shows that the pavement for the Shell premises covers the entire corner, with two curb cuts going onto the Shell premises from the Veterans side and, right around the corner, another curb cut going onto the Shell premises from Causeway. A survey plan introduced into evidence shows that the Shell premises cover the dedicated area for the right-of-way of 24th Street that runs through the Shell property.
The Shell station covers the area at the northeast corner of Square 50 comprising Lots 1 through 6 facing Causeway Boulevard and Lots 27 through 30 facing Veterans Boulevard.[5] Lots 25 and 26, adjacent *1169 to the west side of the Shell premises, are owned by a person identified in testimony only as “Mrs. Duvigneaud.” To the west of the Duvigneaud property are plaintiffs’ Lots 21 ^through 24. The subdivision plats, the surveys, and the Shell station plans all indicate the existence of the 24th Street right-of-way simply as either “24th Street” or “Old 24th Street.”
The photographs, maps and testimony established that there is a carwash building on the Shell premises abutting the western boundary of the Shell property, with a wooden fence that extends from the building north toward Veterans, crossing the 24th Street right-of-way as shown on the plats and ending at the public sidewalk. The Duvigneaud property next to the Shell premises appears to be mostly covered with grass. The Kavanagh property contains a building and is paved over with asphalt.
Bowers’ strip of land begins in front of the Veterans side of the Shell premises, starting at an “X” marked immediately to the east of the westernmost curb cut on the Veterans side. The depth of his strip at the point of the “X” by the Shell station is zero; the strip stretches to the west for approximately 236 feet, widening to somewhat less than nine feet at its end at the west boundary line of the Harlem Subdivision, which is also the west boundary of plaintiffs’ property. Shell now pays Bowers in order to keep and use its driveway curb-cut going across his strip of land, although he had to sue Shell in order to get payment. He has never received rent from Mrs. Duvigneaud for the portion of his strip that runs in front of her property.
The last tenant of the Kavanagh property was a Toyota automobile dealership, which also leased the Duvigneaud property as parking space for its car inventory. During the existence of the Toyota lease of the Kavanagh property, the Kavanaghs’ previous lease of Bowers’ strip of land ended on May 31, 1997. | sUnder that lease the Kavanaghs had been paying Bowers $303.75 per month to lease the portion of Bowers’ land in front of theirs.
The Kavanaghs forgot to exercise their renewal option within the time period provided by the lease. The day after it expired Bowers notified them that the lease had ended and demanded either a rental agreement or a check in the amount of $3,350.00 for the ensuing month, in default of which he would insist that the premises be vacated.
The parties were unable to reach agreement at first, resulting in Bowers’ chaining off the driveways that crossed his property to go onto the Kavanagh property (the Toyota premises). The Kavanaghs were contractually obligated to the Toyota dealership under a lease that would not end until 2001. Eventually, therefore, they reached an agreement and entered into a new lease with Bowers, providing for a rental of $750.00 per month and extending from September 22, 1997 to January 31, 2001. The Toyota dealer vacated the premises when its lease ended; the Kav-anagh property has been vacant since then.
Douglas Robert, Traffic Engineer for Jefferson Parish, testified that the 24th Street right-of-way intersects with Causeway Boulevard at the Veterans Boulevard line. He stated that the Veterans-Causeway intersection is one of the most complex intersections in the parish and that the Parish has no use for the 24th Street right-of-way because it is so close to Veterans Boulevard. He did not consider it to be a road, simply an unimproved right-of- *1170 way. He said the Parish makes no use of the right-of-way now and he knew of no public need for it.
Roberts testified further that the Parish would not allow adjacent property owners to connect with Causeway Boulevard by going through the Shell station to 19use the 24th Street right-of-way. The primary reason for disallowing such use is that the intersection of the 24th Street right-of-way with Causeway is at what he described as a “tenuous location” because it would require a U-turn and would go over the driveways into the Shell station. He pointed out that the Parish can forbid people to use a dedicated right-of-way. He also said that the fact that the right-of-way has not been revoked does not mean the Parish still has a need for it.
Roberts was familiar with the strip of land owned by Bowers and said he did not understand why the Parish left such a small piece of land when it improved Veterans. He indicated that in expropriating property for street widening now, they would not leave a small piece such as that.
The trial court concluded that a public road is one that is physically open and available for public use and, because 24th Street has never actually been constructed by the Parish or used by the public, it exists only on paper and cannot actually be used by plaintiffs to gain access to their property. The court found that to deny the plaintiffs access through defendant’s property to Veterans Memorial Boulevard would render their property valueless, since no tenant or lessee could use the property without consent of the defendant. The court found further that defendant’s property has no use except for rental value to the parties behind it and is totally useless except as a method of passage to Veterans Memorial Boulevard. Accordingly, the trial court held that plaintiffs are entitled to a right of passage over defendant’s land to the nearest public road, Veterans Memorial Boulevard.
Bowers appeals. He asserts that the trial court erred in finding that the Kav-anaghs are entitled under La.C.C. Art. 689 to a right of passage over his property to Veterans Memorial Boulevard.
11 (Alternatively, in the event this Court finds the trial court did not err in finding plaintiffs entitled to a right of passage, defendant asserts the trial court erred in failing to apply La.C.C. Art. 693, which would deny plaintiffs a right of passage due to their own fault or omission, or the court erred in failing to apply La.C.C. arts. 690 and 692 to specifically define the extent and location of the right of passage granted to plaintiffs over the property of defendant.
Defendant argues that plaintiffs’ estate is not an enclosed estate because it has access to a public road, namely, the dedicated and unrevoked portion of the right-of-way for 24th Street. He contends that plaintiffs’ estate can only be considered enclosed because of their own omission in failing to assert their right to use of the unrevoked portion of the 24th Street right-of-way.
In opposition, plaintiffs note that La. C.C. Art. 689 requires access to a “public road.” They argue that access in law is access in fact and that the 24th Street right-of-way provides no access in fact because it exists only on paper, any attempt to use the right-of-way would be unsafe, hazardous to pedestrians and other traffic, and would not be allowed by the Parish, as stated in Douglas Roberts’ testimony. Finally, they assert that denying plaintiffs relief would result in their property being taken out of commerce because they cannot lease or sell it without access.
LAW AND ANALYSIS
“The owner of an estate that has no access to a public road may claim a right *1171 of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.” La.C.C. art. 689.
_LUA statutory dedication accomplished through the filing of a correct map of the platted or subdivided lots showing the streets dedicated to the public is a matter of public record that transfers ownership to the same extent as a contract of sale, so that any change in ownership of the streets must be recorded. State, Dept, of Tramp. & Development v. Scramuzza, 96-1796, p. 6 (La.4/8/97), 692 So.2d 1024, 1028.
In the case of a statutory dedication, actual use by the public is unnecessary and the policy jury [parish council] can at any time decide to use the street in question. Arkansas-Louisiana Gas Co. v. Parker Oil Co., on rehearing, 190 La. 957, 989, 183 So. 229, 240 (1938), cited in State, Dept, of Transp. & Development v. Scramuzza, 96-1796 at pp. 7-8, 692 So.2d at 1028-1029.
In this case the right-of-way for 24th Street still remains dedicated to the Parish, although it has never been used as a street and, indeed, there is no appearance of a street to the naked eye. It is a street only on paper. Although the Kavanaghs purchased the portion of 24th Street in front of their property, the right-of-way still exists running in front of the Duvig-neaud lots and the Shell premises. Does that invisible right-of-way make a “public road,” however, for purposes of La.C.C. art. 689?
La.C.C. art. 457 defines a public road as “one that is subject to public use.” La. R.S. 48:491 states, “All roads or streets in this state that are opened, laid out... shall be public roads or streets, as the case may be.”
“[A] public highway, street or road is any place that is (1) open to vehicular traffic by members of the general public, even if the public is unlikely to use the Inroad except to go to a particular place; and (2) maintained by the public.” Bardfield v. New Orleans P.B. Railroad, 371 So.2d 783, 787 (La.1979).
We find that á right-of-way owned by the public is not the same as a public road. A right-of-way that is never developed or used as a road is not a road. It is simply property lying fallow. The public body that owns it (in this case the Parish) may decide never to develop it into a roadway, yet may continue to own the property.
While Article 699 [now Article 689] has been generally accepted as designed to benefit the landowner so he could produce profit for himself and obtain full utility of his land, it must now be deemed also to offer protection of public interest. As land becomes less available, more necessary for public habitation, use, and support, it would run contrary to public policy to encourage landlocking of such a valuable asset and forever removing it from commerce and from public as well as private benefit.
Rockholt v. Keaty, 256 La. 629, 641, 237 So.2d 663, 668 (La.1970).
The servitude that an owner of an estate surrounded by other lands may impose on neighboring property to gain access to a public road is provided not only for the benefit of the landowner by permitting full utility of his land, but also to benefit the public by keeping valuable property in commerce. Vermilion Parish School Bd. v. Broussard, 263 La. 1104, 1109, 270 So.2d 523, 525 (1971).
Considering the above, we find the trial court was correct in holding that the right-of-way for 24th Street is not a public road as intended by La.C.C. art. 689. Therefore, plaintiffs are entitled to claim a right of passage over defendant’s land.
*1172 Defendant asserts in the alternative that a right of passage over his property should be denied under La.C.C. art. 693, which provides, “If an estate becomes | ^enclosed as a result of a voluntary act or omission of its owner, the neighbors are not bound to furnish a passage to him or his successors.”
Bowers contends that the unrevoked 24th Street right-of-way would, provide a means of access to Causeway Boulevard, but plaintiffs have done nothing to assert the use of that right-of-way for its intended purpose. Hence, he argues, they are responsible for an omission under Article 693 that prevents their forcing defendant from granting them passage. Bowers proposes that, where there exists a dedicated right-of-way for a street or road, the owner of an enclosed estate must compel the Parish to construct a road on the right-of-way rather than exercise the right granted under Article 689.
We find that imposing such a requirement in cases like this would unduly burden public landowning bodies, which presumably have constructed throughout their civic limits as many public roadways as their budgets can afford or as their populace requires. In addition, as testified by Douglas Robert, the construction of this road would render an already complex intersection even more hazardous to public use.
Bowers also contends that plaintiffs should exercise their right to compel removal of the obstructions placed on the 24th Street right-of-way by Shell or others, so it can be used as a roadway.[6]
What is at issue here, however, is not plaintiffs’ right to use the 24th Street right-of-way. The issue is whether the 24th Street is a public road within the intention of La.C.C. art. 689. We have already answered that question negatively. Therefore, we find no merit to this argument.
| uFinally, in the event this Court upholds plaintiffs’ right to access, defendant asserts that the trial court erred in failing to specifically define the extend and location of the right of passage.
Defendant is correct in this point. However, the issues in the case were bifurcated, with the issue of plaintiffs’ right to access over defendant’s property to be definitively determined before the trial court makes any ruling on the amount of damages, compensation, or any related matters such as where the passage should take place. The matter will be remanded for determination of the extent and location of the access as well as all other issues.
For the foregoing reasons, the judgment of the district court is affirmed and the matter is remanded for determination of the extent and location of the access over defendant’s property and for decision of all other issues in the case. Costs of this appeal are assessed against the defendant-appellant.

AFFIRMED AND REMANDED.

DALEY, J., dissents with reasons.
11 ..APPENDIX A

Description of Property of Plaintiffs

(Esther Martiny Kavanayh, Cynthia Ann Cole, James Cole, Jr., Wilfred E. Martiny, Gayle Kavanagh Terrell, Patricia A. Kavanagh, Maurice E. Kavanagh, Jr., Maureen Kav-anagh O’Connell, Lloyd Martiny, Jr.)

1. FOUR CERTAIN LOTS OF GROUND, together with all the im *1173 provements thereon, all rights, ways, servitudes, privileges • and advantages thereunto belonging or in anywise appertaining, situated in the PARISH OF JEFFERSON, State of Louisiana, in HARLEM SUBDIVISION, containing a portion of original Lots 13 and 14 on a plan of 16 lots of ground, dated February 19, 1835, and deposited for reference in the office of the late Felix Grima, N.P., and more particularly according to the plan of Frank H. Waddill, C.E., dated February 12, 1925, a copy of which is made part of an act before Harold A. Buchler, N.P., dated December 28, 1951, and according to said plan said lots measure as follows, to wit:
LOTS 21, 22, 23 & 24, Square 50, Harlem Subdivision measure as follows, to wit: LOTS 21, 22, 23 & 24 measure each twenty-seven (27’) feet front on Twenty Fourth Street, same width in the rear, by a depth between equal and parallel lines of one hundred twenty (120’) feet. Said Square 50 is bounded by 24th Street, Harlem Avenue, 25th Street, and the Western Boundary line of said subdivision.
2. ONE CERTAIN PORTION OF GROUND, together with all the improvements thereon, all rights, ways, servitudes, privileges and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, beginning at a point on the 24th Street right-of-way at the northeast corner of Lot 24, Square 50, Harlem Subdivision, the POINT OF BEGINNING; thence proceed in a westerly direction along the 24th Street right-of-way and along the northern boundary line of Lots 21, 22, 23 & 24, Square 50, Harlem Subdivision, a distance of 108.00 feet to a point at the northwest corner of Lot 21, Square 50, Harlem Subdivision; thence proceed at a 90"angle with the last previously described line in a northerly direction, a distance of 50.00 feet to a point; thence proceed in an easterly direction along the 24th Street right-of-way line, a distance of 108.00 feet to a point; thence proceed in a southerly direction at a 90 angle with the previously described line, a distance of 50.00 feet to a point, said point being the POINT OF BEGINNING, all as more fully described and shown on a survey by J.J. Krebs & Sons, Inc., dated September 14, 1970.
11 «APPENDIX B

Description of Property of Defendant (Posey R. Bowers, Jr.)

A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the right, ways, privileges, servitudes and appurtenances thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, in the part thereof known as the “Town of Harlem” or HARLEM SUBDIVISION, comprising a triangular strip on 24th Street, containing 1,057 square feet and measuring 8.94 feet on the west boundary of Square 47, and running along 24th Street, tapering to a point on 24th Street 236.42 feet from said west line of Square 47;
Being further described according to a survey by Sterling Mandle, Land Survey- or, dated February 9, 1972, and according [to which] the portion is located in said Square 47, commencing at a point at the eastern boundary of Athania Addition No. 2, which is the point of beginning; thence in an easterly direction along 24th Street a distance of 236.42 feet (title, and 216 feet actual) to a point; thence in a west-northwesterly direction through the southern portion of Square 47, a distance of 236.59 feet (title, and 216.15 feet actual) to a point at the eastern boundary of Athania Addition No. 2, thence in a southerly direction *1174 a distance of 8.94 feet (title, and 7.93 feet actual) to the point of beginning.
[[Image here]]

. See Appendix A for legal descriptions of plaintiffs’ property.

.The plan of Harlem Subdivision is dated 1925. The evidence does not establish precisely when Veterans Memorial Boulevard was dedicated, but the evidence does establish that the Parish expropriated property for construction and/or widening of Veterans in the 1950s and 1970s.

. See Appendix B for legal description of defendant’s property.

. The survey is made part of this opinion as Appendix C.

. We could find no evidence in the record regarding ownership of the land on which the Shell service station stands. The Shell Oil Company diagram contains a property description that might have that information, but the copy placed in evidence is a greatly-reduced version of the original and the print *1169 ing in the property description contained on it is so tiny as make most of it impossible to read, even with a magnifying lens.

. See La.C.C. art. 458 and Worthen v. DeLong, 99-1149 (La.App. 1 Cir. 6/23/00), 763 So.2d 820.